James D. Moore and Katherine H. Moore v. Commissioner.
Moore v. Commissioner
Docket No. 17007.
United States Tax Court
1949 Tax Ct. Memo LEXIS 239; 8 T.C.M. (CCH) 271; T.C.M. (RIA) 49066; March 18, 1949
Edward E. Burke, C.P.A., 921 Bergan Ave., Jersey City, N.J., for the petitioners. Jonas M. Smith, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners challenge respondent's determination of a deficiency in income and victory tax for the year 1943 in the amount of $4,178.50. The deficiency results in part from respondent's determination that the amount of $12,500, received by petitioner James D. Moore during the taxable year as compensation for personal services as receiver and trustee of a New Jersey cemetery corporation, was not subject to the provisions of section 107, Internal Revenue Code. Also in issue is the question whether, if the compensation is subject to the provisions of section 107, it is subject to tax computation *240 at the reduced amount provided by the Current Tax Payment Act of 1943. Findings of Fact The parties have filed a stipulation of facts which we adopt as part of our findings of fact herein. Petitioners, husband and wife, filed a joint Federal income and victory tax return for the taxable year 1943 with the collector of internal revenue for the fifth district of New Jersey. On April 20, 1936, William F. Burke, John N. Platoff, and petitioner James D. Moore, hereinafter called petitioner, were appointed by the Chancery Court of New Jersey as temporary receivers and trustees of Fairview Cemetery Company, a New Jersey corporation. By a "final decree" of April 27, 1938, Chancery Court ordered that the same persons who had been serving under the earlier appointment as receivers and trustees "pendente lite" were thereafter to serve as receivers and trustees until further order. Appointment of the receivers for Fairview was required because the management had intermingled its funds with those of other companies, had conveyed cemetery lands to another corporation, and had issued bonds far in excess of the value of the cemetery lands at the time of their acquisition. Numerous stockholders, *241 bondholders, and others filed claims with the receivers. Not later than 1938 the receivers commenced their efforts to settle the affairs of the cemetery company and to reorganize it by agreements with the interested parties which were ultimately brought to a successful conclusion early in 1943. In litigation captioned Burke v. Gunther the Chancery Court issued a decree declaring the bonds invalid and ordering the lands reconveyed to Fairview. Pursuant to a subsequent decree, dated July 9, 1942, the parties to the litigation undertook to reach a compromise which resulted in a reorganization. The receivers filed periodic reports and accounts with Chancery Court. The periods covered, the amount of compensation received by petitioner following approval of each report, and the year in which the compensation was received, are as follows: Year
Report
Period
Compensation
Received
First Intermediate
Apr. 20, 1936, to Sept. 30, 1936
None
Second Intermediate
Apr. 20, 1936, to Dec. 31, 1936
$3,500.00
1937
Third Intermediate
Jan. 1, 1937, to Dec. 31, 1937
3,000.00
1938
Fourth Intermediate
Jan. 1, 1938, to Dec. 31, 1938
3,000.00
1939
Fifth Intermediate
Jan. 1, 1939, to Dec. 31, 1939
3,000.00
1940
Sixth Intermediate
Jan. 1, 1940, to Dec. 31, 1940
None
Seventh Intermediate
Jan. 1, 1941, to July 9, 1942
12,500.00
1943
Eighth Intermediate
July 9, 1942, to Dec. 31, 1943
None
Ninth Intermediate
Jan. 1, 1944, to Dec. 31, 1944
750.00
1945
Tenth Intermediate
Jan. 1, 1945, to Dec. 31, 1945
2,000.00
1946
Eleventh Intermediate
Jan. 1, 1946, to Dec. 31, 1946
2,000.00
1947
*242 The compensation received upon approval of the first, second, third, fourth, fifth, ninth, and tenth intermediate reports was in payment for services rendered during the periods covered by those reports as stated above. Petitioner rendered continuous services as receiver during every month of 1940, 1941, and 1942. In their Sixth Intermediate Report the receivers requested no payment of compensation, although they had no reason to believe that it would not be allowed if requested. The Seventh Intermediate Report and Account contained a statement of activities of the receivers to December 11, 1942, on which day it was filed. That report requested "That an allowance may be made to petitioners on account of their services as receivers and trustees, and to petitioners' solicitors for their services in the administration of this trust." On December 11, 1942, Chancery Court issued an order requiring Fairview Cemetery Company and its creditors to show cause on December 21, 1942, why the Seventh Intermediate Report and Account should not be approved and the requested compensation allowed. On December 21, 1942, petitioner conferred with Vice-Chancellor Egan of Chancery Court with respect *243 to the amount of compensation to be allowed the receivers upon approval of the Seventh Intermediate Report and Account. At that time petitioner stated that he expected the compensation to be in payment for services rendered during the period covered by the Sixth Intermediate Report, the Seventh Intermediate Report, and such subsequent time as was required to conclude the reorganization of the cemetery. Although at various other times petitioner conferred with Chancery Court concerning the amount of Compensation to be allowed, there was no discussion concerning the periods of time to be covered by the compensation. From December 11, 1942, when the Seventh Intermediate Report and Account was filed, throughout the remainder of the year 1942, petitioner rendered services toward completion of the reorganization of the cemetery. The reorganization was substantially completed by January 1, 1943. In its order of January 4, 1943, Chancery Court stated: "And the matter having been heard on the return day of said order to show cause; "It is, on this 4th day of January, Nineteen Hundred and Forty-three ORDERED that the said Seventh Intermediate Report and Account of the aforesaid Receivers *244 and Trustees is hereby approved and allowed; and a further allowance of $12,500.00 each be and is hereby made to William F. Burke and James D. Moore as Receivers and Trustees * * *" The $12,500 was received by petitioner in the taxable year, as follows: Date
Amount
January 5
$7,500.00
April 14
1,000.00
June 4
1,000.00
August 18
1,000.00
December 1
2,000.00
On June 14, 1944, the receivers filed their Eighth Intermediate Report and Account, in which they stated: "2. On December 11th, 1942, petitioners filed with this Court their Seventh Intermediate Report and Account covering the period from January 1, 1941, to July 9, 1942, and by an Order of this Court made on January 4, 1943, upon the return of an Order to Show Cause, said Report and Account was in all things approved and confirmed * * *" The Eighth Intermediate Report and Account made no request for compensation, and none was allowed in Chancery Court's order of September 18, 1944, approving that report and account. The receivership of Fairview Cemetery Company is still in force and effect, with petitioner and William F. Burke acting as receivers and trustees. Petitioner's gross income for *245 the taxable year, as disclosed in his return, was $9,864.66. He did not report any part of the $12,500 compensation, above, as income for the taxable year. In a schedule attached to his return he revised his income tax returns for the years 1940, 1941, and 1942, by adding $4,166.67 (being 1/3 of $12,500) to his income for each of those years. As a part of the Explanation of Adjustments in his notice of deficiency respondent "* * * determined that the amount of $12,500.00, received by you during the taxable year 1943 as compensation for services performed as Receiver and Trustee of The Fairview Cemetery Company, constitutes taxable income for said year." Opinion On the principal issue this case is controlled by Ralph E. Lum, 12 T.C. 375 decided this day. Even accepting petitioner's position that his services as permanent receiver commenced only with the "final decree" in the temporary receivership, dated April 27, 1938, and that a definite phase of the receivership terminated on completion of the reorganization in January, 1943, the "total" compensation received for the services from 1938 through 1942 was sufficiently large so that the amount in issue, paid in the *246 year before us, is less than 80 per cent of the total. [1] If there was any divisible segment of the receivers' activities or duties during this period, the record does not disclose it. Since petitioner throughout this period was acting as receiver in the same receivership, performing, for all that appears, services of a homogeneous and continuous nature, [2] the benefits of section 107 must be viewed as inapplicable. An alternative contention is that petitioner was receiving "back pay," within the definition of section 107(d), in that he was an "employee" receiving remuneration comparable to wages or salary; that his employer was the State of New Jersey; and that postponement of his compensation was, pursuant to subdivision (d) (2) (iii), due to "lack of funds appropriated to pay such remuneration." Petitioner would not *247 seem to be an employee in the usual sense of the word, nor to be receiving a salary, nor to have his pay dependent upon"appropriations," as that term is generally understood. [3] But, however that may be, there is a complete absence of proof of an essential element for the application of section 107(d), which, on petitioner's theory, would require that his remuneration "would have been paid prior to the taxable year, except for the intervention of one of the following events," in this case, "lack of funds appropriated to pay such remuneration." The record does not show there was any lack of such funds nor that payment would have been made in a prior year but for such lack. Payment presumably came, as would be usual, from the receivership estate; for all the record contains, it was equally available in the prior year, and there is no showing that it would not "have been paid prior to the taxable year," had such an application been made. [4]
*248 If for no other reason, therefore, petitioner's contention on this branch of the case must fail for lack of proof. It follows that the deficiency must be sustained under either subdivision of section 107. Decision will be entered for the respondent. Footnotes
1. Jan. 1-Dec. 31 1938
$3,000
Jan. 1-Dec. 31 1939
3,000
Jan. 1-Dec. 31 1942
12,500
Total
$18,500 80 percent of $18,500 is $14,800, which exceeds the $12,500 received in 1943. ↩
2. "* * * our administration was constant in the operation of the cemetery. * * *
"Q. So in every month you performed some service? * * *
"A. Yes."↩
3. Should the section be thought of as ambiguous, the legislative history would tend to demonstrate its inapplicability to such a situation as the present: "* * * Remuneration for personal services, including pensions, retirement pay, bonuses or commissions, which are paid in the current year in accordance with the usual practice or custom of the employer, are not 'back pay,' even though such amounts are received in respect of services performed in a prior year (or prior years). The term refers only to remuneration, the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition." (Italics added.) (Report of the Conference Committee, 1943 Act, H. Rept. No. 1079 (78th Cong., 2d Sess.), 44, 45). ↩
4. "Q. And if you asked for a fee at the end of a periodic period you generally received it, didn't you? "A. Every time we asked for a fee we received it."↩